(No. 82-CC-264▮ ▮▮▮▮▮▮)

TALSMA BUILDERS, INC., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed May 20, 1985.*

SAUL J. MORSE, THEODORE J. HARVATIN, and GRAMLICH & MORSE, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

Claimant was the successful bidder on a project funded through the State of Illinois and directed by the Capital Development Board, for work on the Raster Elementary School in Chicago, Illinois. The total amount of the contract was approximately $1.3 million. There is no dispute as to the fact that the work was performed satisfactorily and in a workmanlike manner and that the Claimant was paid the full amount under the original contract.

The dispute centers around Claimant's request for payment for work which it alleges was an extra under the contract. Claimant asserts that it removed excess excavated material *below the sub-grade* for which it was entitled to compensation at a unit price of $15.00 per unit. Claimant alleges it agreed to pay Latronica & Sons Excavating & Grading to haul 744 loads of excess sub-grade material, constituting 10,416 cubic yards, at a unit

price of $15.00 per cubic yard, or $156,240.00, and, in addition, makes claim for cost and overhead in sum of $7,812.00, for a total claim of $164,052.00.

Respondent contends the work performed was not outside the scope of the contract; that the State did not agree to unit prices for hauling off site disputed materials; that Claimant's proof was insufficient to show the number of cubic yards of disputed materials hauled off site; that neither *quantum meruit* nor estoppel lie against the State. Further, it raises the question whether the claim filed is, in fact, a claim on behalf of Latronica Excavating Company, a subcontractor of Claimant, and as such an improper subject for claim. The State further points out that a change order for such alleged additional work was not submitted until 14 months expired after the hauling was completed.

The first issue to be determined is the nature of the materials hauled out by Claimant's subcontractor. Was it *"excess sub-grade material"* as contended by Claimant, or was it debris, footings or building materials and therefore included within the scope of the original contract, as argued by the State.

Claimant relies on the contract provision as appears at section 02210, part 3.02 (excavation) under subparagraph C which reads as follows:

"Cuts and fills are not necessarily balanced. Any additional fills required shall be paid for at the contract unit. Excess excavating materials shall be deposited by burying (as required) and spreading on the site as directed at no additional cost to the owner. In the event excess excavated material, *below the sub-grade level* is encountered, the Architect shall determine if this is to be distributed on-site or off-site and the Contractor shall be reimbursed at the Contract Unit Price."

This raises the question of what is meant by "excess excavated material *below the sub-grade level*".

The State, in reference to the above contract

provision, argues that the term sub-grade is the prepared grade upon which the building footings and foundations, drives, parking lot and walks are constructed. It further contends there is nothing in the record to indicate how much material was hauled out *down to the sub-grade* nor how much was excavated and hauled out as site preparation and in removing existing underground foundations. As a further contention, it notes that the quoted contract clause requires that the architect determine whether to haul such materials "off-site" or not. Thirdly, the State argues that the clause calls for payment at "the unit price" and there was no unit price agreed upon since unit price was excluded from the contract. The State makes the argument that since unit prices were excluded, the contract became a lump sum contract.

From the record before the Court, the only evidence presented to determine whether the hauling was of debris or was of "excess *sub-grade* material" was testimony of Arthur A. Talsma, president of Claimant corporation, Kenneth Talsma, Claimant's construction superintendent on the job, and Michael Latronica, an excavator and grader. Talsma said that debris which was included in the contract price was material on the surface visible to the eye, that was at grade level, and that sub-grade material refers to material *below the grade* or ground level and not visible to the eye at the time of beginning construction. According to this witness excess sub-grade material is material which if not removed, would have raised the "topo" elevation. He further stated he asked the architect if he wanted to revise the elevation by letting the material remain on site. However, for four months he received no response and rather than delay the completion of the project, the decision was made to haul the material away. This was

done to conform with the original specifications, according to his testimony.

Such testimony fell short of proving what was meant by "below the sub-grade" level. Below the grade is not the equivalent of below the *sub-grade*.

Claimant has failed to meet it's burden of proof that the materials removed were below the sub-grade level. Even if it were, he has failed to prove the quantity of such materials. If there were excess materials outside the contract, the procedure called for a change order before the work was done. This procedure was not followed before such removal and this was not authorized.

Although Claimant did request authorization for the additional work claimed by submitting a change order, as is customarily done, such authorization was never given by the owner or his authorized representative, and proceeding with the work without such authorization was the Claimant's election and risk.

On the question of unit price, again the evidence is clear from Respondent's exhibit No. 2, which is entitled owner-contractor-agreement, which said exhibit was duly admitted into the record, that Claimant acknowledged that unit prices would not apply and are excluded from the contract. Arthur G. Talsma testified that he executed the agreement on behalf of the Claimant, and that he also initialed and acknowledged that unit prices were not applicable. It is apparent from the evidence that Claimant agreed to construct the project for a lump sum price, subject, of course, to change orders by which additional work would be compensated at a price negotiated by the parties.

The Court holds that Claimant failed to meet its burden of proof in the following respects:

1. That the material was excess excavated material *below the sub-grade* level.

2. That the proper change order procedure was followed assuming the material was outside the scope of the Contract.

3. That unit price was applicable assuming the work was outside the Contract.

Claim is therefore denied.